1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARIEL C. JOHNSON                          No.  2:23-cv-2833 AC

12                  Plaintiff,

13        v.                                   **ORDER**

14   COMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title

20   II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow,

21   plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for

22   summary judgment will be GRANTED.

23                        I.  PROCEDURAL BACKGROUND

24        Plaintiff applied for DIB on September 23, 2021, alleging that the disability onset date

25   was August 1, 2019.  Administrative Record ("AR") 17.[2]  The application was disapproved

26   _____

27   [1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).
28   [2] Two copies of the AR are electronically filed as ECF Nos. 9-1 and 9-2 (AR 1 to AR 757).

                                    1

1    initially on April 18, 2022 and on reconsideration on July 27, 2022. Id. On July 6, 2023, ALJ

2    Thomas Auble presided over the online video hearing on plaintiff's challenge to the disapprovals.

3    AR 42-77 (transcript).  Plaintiff, who appeared with her counsel Terry LaPorte, was present at the

4    hearing.  AR 42.  Mitchell Schmidt, a Vocational Expert ("VE"), also testified.  AR 68.

5         On July 21, 2023, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d)

6    of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 17-36 (decision), 37-41 (exhibit list).  On

7    November 14, 2023, after receiving Exhibits 21E and 22E, two Representative Briefs dated June

8    22 and August 9, 2023 as additional exhibits, the Appeals Council denied plaintiff's request for

9    review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.

10   AR 1-5 (decision and additional exhibit list).

11        Plaintiff filed this action on December 6, 2023.  ECF No. 1; see 42 U.S.C. § 405(g).  The

12   parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 4-5, 7.  The parties' cross-

13   motions for summary judgment, based upon the Administrative Record filed by the

14   Commissioner, have been briefed.  ECF Nos. 10 (plaintiff's summary judgment motion), 12

15   (defendant's summary judgment motion).  Plaintiff has also filed a reply brief in support of her

16   motion.  ECF No. 13.

## II.  FACTUAL BACKGROUND

18        Plaintiff was born on in 1990, and accordingly was, at age 31, a younger individual under

19   the regulations when she filed her application.  AR 34; see 20 C.F.R. §§ 404.1563(d), 416.963(c).

20   Plaintiff has a high school education, has finished two years of college, and can communicate in

21   English.  AR 34, 244.  Plaintiff worked as a part-time barista from 2007 to 2008, a part-time

22   restaurant cashier for a few months each in 2008 and 2014, a warehouse processor from August

23   2014 to August 2019, and as a Parks Department service aid from June to August 2019.  AR 245.

## III.  LEGAL STANDARDS

25        The Commissioner's decision that a claimant is not disabled will be upheld "if it is

26   supported by substantial evidence and if the Commissioner applied the correct legal standards."

27   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

28   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

2

1   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

2          Substantial evidence is "more than a mere scintilla," but "may be less than a

3   preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

4   evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

5   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

6   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

7   suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

8   Although this court cannot substitute its discretion for that of the Commissioner, the court

9   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

10  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

11  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

12  court must consider both evidence that supports and evidence that detracts from the ALJ's

13  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

14         "The ALJ is responsible for determining credibility, resolving conflicts in medical

15  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

16  Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

17  which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

18  278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

19  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

20  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

21  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

22  evidence that the ALJ did not discuss").

23         The court will not reverse the Commissioner's decision if it is based on harmless error,

24  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

25  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

26  2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

27  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

28

1

IV.  RELEVANT LAW

2      Disability Insurance Benefits and Supplemental Security Income are available for every

3 eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff

4 is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

5 determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

6 (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

7      The Commissioner uses a five-step sequential evaluation process to determine whether an

8 applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

9 Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

10 process to determine disability" under Title II and Title XVI).  The following summarizes the

11 sequential evaluation:

12         Step one: Is the claimant engaging in substantial gainful activity?  If
           so, the claimant is not disabled.  If not, proceed to step two.
13
20 C.F.R. § 404.1520(a)(4)(i), (b).
14
15         Step two: Does the claimant have a "severe" impairment?  If so,
           proceed to step three.  If not, the claimant is not disabled.
16 Id. §§ 404.1520(a)(4)(ii), (c).

17         Step three: Does the claimant's impairment or combination of
           impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
18         Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
           step four.
19
20 Id. §§ 404.1520(a)(4)(iii), (d).

21         Step four: Does the claimant's residual functional capacity [RFC]
           make him capable of performing his past work?  If so, the claimant
22         is not disabled.  If not, proceed to step five.

23 Id. §§ 404.1520(a)(4)(iv), (e), (f).

24         Step five: Does the claimant have the residual functional capacity
           perform any other work?  If so, the claimant is not disabled.  If not,
25         the claimant is disabled.

26 Id. §§ 404.1520(a)(4)(v), (g).

27      The claimant bears the burden of proof in the first four steps of the sequential evaluation

28 process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); <u>Bowen</u>, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  <u>Hill v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since August 1, 2019, the alleged onset date (20 CFR 404.1571 <u>et seq.</u>).

3. The claimant has the following severe impairments: seizure disorder; migraine headaches; cognitive disorder; anxiety disorder; and depressive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ["Appendix 1"] (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can never climb ladders, ropes, or scaffolds.  She can frequently climb ramps or stairs; frequently balance, stoop, kneel, crouch, and crawl; never be exposed unprotected high places and unguarded moving mechanical parts.  She must avoid concentrated exposure to extreme heat, extreme cold, vibration, and atmospheric conditions such as fumes, odors, dust, gases, and poorly ventilated areas as defined in the selected SCO [Selected Characteristics of Occupations] of the DOT [Dictionary of Occupational Titles]. She can tolerate a moderate noise intensity level as defined in the SCO; can understand, remember, and carry out simple instructions and make simple work-related decisions; can tolerate no interactions with the public; can tolerate occasional interactions with coworkers and supervisors; can work at a consistent pace in goal oriented work throughout the workday but cannot perform work requiring strict production rate, such as assembly line work out of the worker's control or work requiring an hourly quota.  She can perform work with only occasional changes in a routine work setting.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on April 2, 1990 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

5

1    8. The claimant has at least a high school education (20 CFR
     404.1564).

2

3    9. Transferability of job skills is not an issue in this case because the
     claimant's past relevant work is unskilled (20 CFR 404.1568).

4    10. Considering the claimant's age, education, work experience, and
     residual functional capacity, there are jobs that exist in significant
5    numbers in the national economy that the claimant can perform (20
     CFR 404.1569 and 404.1569a).

6

7    11. The claimant has not been under a disability, as defined in the
     Social Security Act, from August 1, 2019, through the date of this
     decision (20 CFR 404.1520(g)).

8

9    AR 19-35.

10        As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act.

11   AR 36.

12                                    VI.  ANALYSIS

13        Plaintiff argues that the disability analysis should have concluded at step three because the

14   symptoms of her seizures meet those of a listed impairment.  ECF No. 10 at 20-23.  At step five,

15   plaintiff alleges that the ALJ failed to properly credit her testimony about her impairments.  Id. at

16   12.  Plaintiff also contests the ALJ's finding that certain medical opinions were unpersuasive.  Id.

17   at 16-19.

18        A.  The ALJ Did Not Err at Step Three

19        At step three of the sequential evaluation, a finding of disability is compelled where the

20   claimant's impairment or combination of impairments meets or equals an impairment listed in

21   Appendix 1 to Subpart P of the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  Each Listing

22   sets forth the specific "symptoms, signs, and laboratory findings" which must be established for a

23   claimant's impairment to meet the Listing.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir.

24   1999).  The plaintiff bears the burden of proving that she meets each criteria in the listing for that

25   impairment.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  The burden for this showing

26   is high because the listings in Appendix 1 were "designed to operate as a presumption of

27   disability that makes further inquiry unnecessary."  Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th

28   Cir. 2013) (quoting Sullivan v. Zebley, 493 U.S. 521, 532 (1990)).  The ALJ's findings, however,

                                           6

"must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ found that plaintiff's impairment or combination of impairments did not meet or medically equal the Listings for epilepsy (Listing 11.02) or for mental illness (Listings 12.02, 12.04 and 12.06).  AR 20-22.  Plaintiff alleges error as to the epilepsy Listing only.  ECF No. 10 at 21-23.

Appendix 1 defines epilepsy as "a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain."  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02H1.  A finding of epilepsy supports a finding of disability under step three only if "documented by a detailed description of a typical seizure" and characterized by one of four sets of symptoms:

> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

> > 1. Physical functioning (see 11.00G3a); or

> > 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

> > 3. Interacting with others (see 11.00G3b(ii)); or

> > 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

> > 5. Adapting or managing oneself (see 11.00G3b(iv)); or

> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

> > 1. Physical functioning (see 11.00G3a); or

> > 2. Understanding, remembering, or applying information (see

7

11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02.[3]

Plaintiff argues in conclusory terms that her seizures meet or equal this Listing, but she does not link the evidence she recites to any of the four categories of seizures specified in § 11.02 — let alone show how that evidence satisfies each criteria of any of them. See ECF No. 10 at 22. The court is unpersuaded by plaintiff's showing here. At the hearing, plaintiff testified that a "2009 surgery was successful largely in resolving" any "intractable grand mal motor seizures" that resulted from her condition. AR 61. In a 2023 RFC questionnaire, Dr. Tina Shih reported that plaintiff now has 1-2 localized seizures per week lasting 15-20 seconds each, during which plaintiff does not lose consciousness. AR 743, 746. Absent evidence that her seizures caused loss of consciousness, plaintiff cannot meet the Listing on the basis of tonic-clonic seizures.[4] See § 11.00H1a. As for her dyscognitive seizures, plaintiff fails to identify evidence in the record that establishes the required frequency and severity over the required period of time.

Plaintiff also argues that her headaches medically equal Listing 11.02,[5] but her description of the impacts of her migraines is inadequate to demonstrate equivalence at step three. Absent "a detailed description from an AMS (acceptable medical source) of a typical headache event, including all associated phenomena" (e.g., symptoms, aura, duration, intensity), the frequency of

---

[3] "Generalized tonic-clonic seizures" involve "loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions)." Id. at § 11.00H1a. "Dyscognitive seizures[,]" in contrast, involve "alteration of consciousness without convulsions or loss of muscle control" and are often accompanied by "blank staring, change of facial expression, and automatisms[.]" Id. at § 11.00H1b.

[4] Plaintiff does not make this argument, and the record indicates that plaintiff has not had such seizures since a surgical procedure in 2009.

[5] A person with a primary headache disorder may be found disabled under step three if they "exhibit equivalent signs and limitations to those detailed in listing 11.02…for dyscognitive seizures[.]" Social Security Ruling ("SSR") 19-4p(8).

headache events, adherence to prescribed treatment, side effects of treatment, and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, plaintiff cannot equal the Listing on the basis of headache. SSR 19-4p.

Even if plaintiff were correct that the ALJ failed to adequately articulate the basis for his conclusion that the evidence did not meet or equal the severity of Listing 11.02, any error would be harmless. The Listing requires "at least one detailed description of [claimant's] seizures from someone, preferably a medical professional, who has observed at least one" of each type of seizure the claimant normally experiences. § 11.00H2. Plaintiff has identified no such detailed description by an observer of plaintiff's seizures or headache events. The medical opinions on which she relies do not indicate that any physician ever personally witnessed a seizure. See generally AR 529-33, 611-17, 743-46. Dr. Chandler, for example, described plaintiff's illness based largely on what plaintiff had "reported" or "stated[.]" AR 529, 530-31. None of plaintiff's treatment providers reported having observed a seizure event. And as noted above, there is no detailed description from an acceptable medical source of a typical headache event. Accordingly, the ALJ had no basis for a finding that plaintiff met or equaled Listing 11.02. There was no error at step three.

    B.   The ALJ Permissibly Discounted Plaintiff's Testimony as to the Limiting Effects of Her Symptoms

In assessing plaintiff's RFC at step five, the ALJ was required to determine the extent to which plaintiff's symptoms limit her ability to do work-related activities. In evaluating the evidence of the intensity, persistence and limiting effects of plaintiff's symptoms, the ALJ found that plaintiff's own statements about the severity and limiting effects of her headaches, seizure episodes and cognitive impairments were "not entirely consistent with the record." AR 24; see also AR 34 ("The claimant's subjective complaints are less than fully consistent and the objective medical evidence does not support the alleged severity of symptoms."). Plaintiff contends that the ALJ erred in making this credibility determination.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First the ALJ must "determine whether the claimant has presented objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

Plaintiff testified that since her 2009 lobectomy she has had difficulty retaining and recalling information. AR 53-54, 62. She attributes this memory loss to the surgery. AR 62. Her difficulties following instructions and paying attention are further exacerbated by her headaches, which occur 24 hours a day, "never go away," and require her to lie down in a dark room approximately three weeks out of every month. AR 52, 57, 59. She testified that she has seizures two to three times a week, which though brief make her headaches worse and require her to lie down for several hours. AR 53, 61. Plaintiff contended that the severity and effects of her headaches, seizures, and cognitive impairments prevent her from working. The ALJ acknowledged that plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[.]" AR 24. He did not suggest that plaintiff was malingering. He found, however, that her testimony as to the extent of her symptoms was "not entirely consistent with the record." AR 24. The ALJ made this finding separately as to plaintiff's headache and seizure episodes and as to her cognitive impairments, identifying in each case the portions of the record he found inconsistent with her allegations of severity.

The ALJ found that plaintiff's testimony as to the severity of her headaches and seizures

was inconsistent with evidence that treatment—including Botox injections, acupuncture and a range of medications—has been effective overall in managing her symptoms, although specific treatments have waned in efficacy over time and needed to be replaced by other treatments.  He also pointed to the absence of grand mal seizures since 2009, the absence of any need for emergency treatment during the relevant period, and the absence of "more significant migraine findings such as presence of aura or significant longitudinal evidence of other symptoms such as photophobia, phonophobia, or nausea or vomiting[]."  Id.  Finally, he pointed to evidence that plaintiff "remained independent on activities of daily living such as medication adherence, grocery shopping, and driving" and was able to pursue a college education.  Id.  These are all permissible bases for discounting subjective testimony.  See Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (subjective complaints properly discounted where claimant received "minimal" and "conservative" treatment); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (ALJ may consider whether claimant engages in daily activities inconsistent with the alleged symptoms).  Having independently reviewed the record cited by the ALJ, the court finds no error.

As to the medical record, the ALJ identified specific evidence inconsistent with plaintiff's testimony.  AR 24-25.  For example, medical records indicate that on several occasions when plaintiff had complained about worsening or disabling headaches, the clinical findings did not indicate any radiological or neurological abnormality *or* symptoms of sensory disturbances associated with migraine.[6]  See AR 24-27, 584, 589, 387, 405, 411, 390, 403, 415, 418, 424, 685. The record also documents examinations which showed normal mental status, coherence, and recall even when plaintiff complained of constant headaches.  See 685, 748, 751.  On this record, the ALJ was entitled to not fully credit plaintiff's testimony.  See Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (where objective medical evidence is inconsistent with subjective

---

[6] Plaintiff points to instances in which medical records do indicate the presence of sensory disturbances associated with headaches, but this merely highlights that the record contains conflicting evidence on the point.  Conflicts in the medical record are for the ALJ to resolve. Ford v. Saul, 950 F.3d 1141, 1149 (9th Cir. 2020).

1    symptom testimony, the ALJ may weigh it as undercutting such testimony).

2            As for response to medication, plaintiff points to portions of the record which reflect her

3    complaints that various treatments were ineffective.  However, the record also contains numerous

4    references to temporary relief from Botox and nerve blocks, and plaintiff informed her physician

5    that the latest treatment, Emgality, had improved her condition.  AR 751.  On this record the ALJ

6    could find that plaintiff had not exhausted her options for mitigating the headaches and could

7    continue to manage the pain.  This is particularly so in light of the evidence, addressed next, that

8    plaintiff remained able to perform daily activities inconsistent with the level and persistence of

9    pain she claimed.

10           On the issue of daily activities, the ALJ reasonably found inconsistency between

11   plaintiff's testimony and her ability to drive, grocery shop, manage her medications, and pursue a

12   college education.  Plaintiff is quite right that an ALJ should not penalize claimants "for

13   attempting to lead normal lives in the face of their limitations."  Reddick v. Chater, 157 F.3d 715,

14   722 (9th Cir. 1998).  But that is not what happened here.  The ALJ did not suggest that the ability

15   to attend college, even with difficulty, necessarily precludes a disability finding.  Neither did he

16   ignore the challenges that plaintiff faced as a student.  He recognized that plaintiff had required

17   accommodations and received A's with additional academic support.  AR 25.  But the need for

18   educational accommodations, even significant ones, does not preclude the ability to perform

19   unskilled work.  The ALJ reasonably concluded that plaintiff's ability to pursue her education

20   with extra support, in combination with her ability to independently handle her activities of daily

21   living, was inconsistent with her testimony that headaches and seizures completely prevent her

22   from functioning in any workplace.  See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)

23   (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds

24   for discrediting the claimant's testimony to the extent that they contradict claims of a totally

25   debilitating impairment).

26           On the issue of cognitive impairments, the ALJ also found that plaintiff's testimony

27   regarding the severity of symptoms was "not entirely consistent with the record as a whole."  AR

28   25.  The ALJ relied primarily on plaintiff's work history and educational achievements, in

12

1    conjunction with the medical evidence.  He noted that plaintiff had successfully work at unskilled

2    jobs prior to the alleged disability onset date in 2019, and that the medical evidence did not

3    support her testimony that her memory and cognitive functioning had decreased at or since that

4    time.  He cited a neurological evaluation from May 2022 that indicated plaintiff's intellectual

5    functioning, language, executive functions, processing speed, and motor function were all intact

6    and there were minimal changes in cognitive abilities compared to prior studies.  Id.  This is

7    precisely the kind of inconsistency with the medical record that permits an ALJ to give a

8    claimant's testimony limited credit as to the severity of symptoms.  See Smartt, 53 F.4th at 498-

9    499.

10         It was also permissible for the ALJ for find that plaintiff's testimony about the severity

11    and functional impacts of her cognitive deficits was inconsistent with her educational progress.

12    As noted above, the ALJ considered the fact that plaintiff had required accommodations, but

13    noted that her ability to nonetheless transfer from community college to Chico State, maintain a

14    full-time courseload, and earn good grades all indicated that her memory and attention problems

15    were not so severe as to preclude all work.  AR 25.  It was not error for the ALJ to identify

16    inconsistency between plaintiff's testimony about the severity of her cognitive deficits and the

17    specific details of her educational progress, or to give her testimony less credit for that reason.

18         In sum, the ALJ articulated clear, specific and convincing reasons for not fully crediting

19    plaintiff's testimony about the severity and limiting effects of her conditions.  Because substantial

20    evidence supported the ALJ's credibility finding, this court is not free to engage in "second-

21    guessing."  Thomas, 278 F.3d at 958.

22         C.  The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

23              1.  The Medical Opinion Evidence

24         The ALJ considered the opinions of numerous treating providers and consultative

25    examiners, explicitly noted which of these opinions he found persuasive and which he did not,

26    and set forth the basis for those conclusions with specificity.  See AR 27- 33.  Plaintiff alleges

27    error in the ALJ's rejection of the opinions of two treating neurologists, Tina Shih, M.D., and

28

1    Carrie Grousse, M.D., treating psychotherapist Orly Heyman-Bole,[7] and psychological

2    consultative examiner Jacklyn Chander, Ph.D.

3              2.   Standards for ALJ's Evaluation of Medical Opinion Evidence

4         In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any

5    particular type of opinion or source, but instead must consider and evaluate the persuasiveness of

6    all medical opinions or prior administrative medical findings from medical sources and evaluate

7    their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see

8    20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of a physician

9    opinion include supportability, consistency, relationship with the claimant (including length of the

10   treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the

11   existence of an examination), specialization, and "other factors that tend to support or contradict a

12   medical opinion or prior administrative medical finding" (including, but not limited to, "evidence

13   showing a medical source has familiarity with the other evidence in the claim or an understanding

14   of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-

15   (5). Supportability and consistency are the most important factors, and therefore the ALJ is

16   required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).

17        Supportability and consistency are defined in the regulations as follows:

18            Supportability. The more relevant the objective medical evidence
             and supporting explanations presented by a medical source are to
19            support his or her medical opinion(s) or prior administrative medical
             finding(s), the more persuasive the medical opinions or prior
20            administrative medical finding(s) will be.
             Consistency. The more consistent a medical opinion(s) or prior
21            administrative medical finding(s) is with the evidence from other
             medical sources and nonmedical sources in the claim, the more
22            persuasive the medical opinion(s) or prior administrative medical
             finding(s) will be.
23

24   20 C.F.R. § 404.1520c(c)(1)-(2).

25        The ALJ may, but is not required to, explain how the other factors were considered.  20

26

27   [7] Plaintiff refers to Ms. Herman-Bole as plaintiff's "treating psychologist," ECF No. 10 at 16, but
     it appears she is not a clinical psychologist but a Licensed Marriage and Family Therapist who
28   provided counseling to plaintiff.  AR 523.

1    C.F.R. § 404.1520c(b)(2).  The Ninth Circuit has confirmed that the new regulatory framework

2    eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ

3    to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or

4    examining doctor's opinion.  Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).  Still, in rejecting

5    any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation

6    supported by substantial evidence.  Id.  In sum, the ALJ "must 'articulate ... how persuasive' [he

7    or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how

8    [he or she] considered the supportability and consistency factors' in reaching these findings."  Id.

9    (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

10                        3.    The ALJ Did Not Err in Evaluating the Opinions of Treating Sources

11                Carrie Grousse, M.D., completed a headache RFC questionnaire on October 27, 2021.

12    She stated an opinion that plaintiff was likely to suffer from excessive absenteeism at any job.

13    The ALJ found Dr. Grouse's opinion to be unpersuasive, primarily because her report was

14    internally inconsistent.  AR 30-31.  Dr. Grousse stated that plaintiff would be precluded from

15    even basic work activities when she had a headache, which happens approximately 7 days a

16    month, and would need breaks frequently and unpredictably; she also stated that plaintiff was

17    capable of performing low stress jobs, had experienced significant improvement with Botox and

18    other treatments, and that her prognosis was "stable with ongoing treatment."  AR 426-430.  The

19    internal inconsistencies noted by the ALJ are real.  The ALJ also noted, with reference to both

20    plaintiff's overall treatment history (set forth in some detail at AR 26-29) and her educational

21    efforts, that "the record as a whole suggested the claimant's headache symptoms were managed at

22    a baseline level that allowed her to generally function."  AR 31.  Accordingly, he concluded that

23    "Dr. Grouse's opinions on excessive absenteeism in the workplace were not corroborated by the

24    record as a whole and were [un]persuasive."  Id.  The court finds that the ALJ adequately

25    explained the supportability and consistency factors on which this conclusion was based.

26                Tina Shih, M.D., provided seizure RFC questionnaires dated November 15, 2021 and May

27    5, 2023.  AR 431-34, 743-46.  Dr. Shih opined that plaintiff would require excessive unscheduled

28    breaks multiple times a day for up to 15 minutes and would miss more than four days of work per

month.  AR 746.  The ALJ found this unpersuasive in light of the evidence that plaintiff had maintained a full time college course load, and her headaches and seizures were sufficiently managed at a baseline level that allowed her to function in the ways previously noted without any need for emergency treatment.  This explanation adequately addresses supportability and consistency.

The letter provided by plaintiff's therapist, AR 520-523, "extensively discussed the claimant's failure in academic pursuits and her inability to perform even unskilled jobs."  AR 33.  The ALJ found this characterization to be inconsistent with plaintiff's actual employment and academic histories.  Accordingly, he found the therapist's conclusion "that the claimant would essentially be precluded from performing even unskilled work" to be unpersuasive.  Id.  Plaintiff's disagreement with the ALJ's conclusion fails to identify legal error.

That the ALJ could have weighed the opinion evidence differently provides no basis for relief.  Because the ALJ's assessment of these medical opinions was supported by substantial evidence, including other medical opinions that plaintiff does not address, his conclusion may not be disturbed by the court.[8]  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (the presence of other opinions provides a basis for rejecting any one of them).  The existence of some contrary evidence does not undermine the substantiality of the evidence on which the ALJ relied.  To the extent plaintiff argues that the ALJ erred by not giving sufficient weight to the nature of the treating relationship, no special weight is required and the ALJ is not obliged to explain how this factor was considered.  See Woods, 32 F.4th at 785.

4.  The ALJ Did Not Err in Evaluating the Opinion of a Consultative Examiner

Plaintiff argues that the ALJ improperly rejected the opinion of consultative examiner Jacklyn Chandler, Ph.D., that plaintiff is likely to have marked difficulty adapting to changes in routine work settings, maintaining attention and concentration, and functioning under normal stress in a work setting.  The ALJ explained that he did not find this opinion persuasive because

---

[8] The ALJ found the opinions of agency psychological consultants Irmgard E. Friedburg, Ph.D. and Kim Morris, Psy.D.'s to be most persuasive.  AR 31.  Their reports are significantly more extensive than those plaintiff relies on here, and include detailed consideration of the medical record.  AR 78-101 (Friedburg report); AR 103-122 (Morris report).

1    Dr. Chandler's test results were inconsistent with those of other examiners, including a

2    neuropsychological evaluation conducted shortly after Dr. Chandler's exam.  AR 32.  The ALJ

3    also noted inconsistencies between Dr. Chandler's opinion and plaintiff's general level of

4    functioning, including independent living, past academic achievements and current educational

5    pursuits.  AR 32-33.  He did not discount Dr. Chandler's opinion in its entirety, but rather adopted

6    her findings regarding limitations on social functioning.  This was incorporated into the RFC.  AR

7    33.

8          The ALJ adequately explained his reasons for weighing Dr. Chandler's opinion as he did.

9    Those reasons clearly relate to consistency and supportability, and substantial evidence supports

10   his conclusions.  Again, the existence of some contrary evidence does not undermine the

11   substantiality of the evidence on which the ALJ relied.  It is up to the ALJ to weigh the evidence

12   and resolve conflicts in the medical record.  <u>Ford v. Saul</u>, 950 F.3d 1141, 1149 (9th Cir. 2020).

13   Plaintiff having identified no legal error, the decision of the ALJ may not be disturbed.

14                              VII.  CONCLUSION

15         For the reasons set forth above, IT IS HEREBY ORDERED that:

16         1.  Plaintiff's motion for summary judgment (ECF No. 10) is DENIED;

17         2.  The Commissioner's cross-motion for summary judgment (ECF No. 12) is

18   GRANTED;

19         3.  This Commissioner's final decision in this matter is AFFIRMED; and

20         4.  The Clerk of the Court shall enter judgment for the defendant and close this case.

21   DATED:  March 21, 2025

22

23                                        _____

24                                        ALLISON CLAIRE
                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                          17